Rena SIMS, Appellant,

v.

The ADOPTION ALLIANCE, Appellee.

No. 04–95–00745–CV.

Court of Appeals of Texas,
San Antonio.

Decided March 20, 1996.
Rehearing Denied April 23, 1996.

Constance Crawford, Student Attorney, Ana Novoa, Supervising Attorney, Center for Legal & Social Justice (St. Mary's University School of Law), San Antonio, for appellant.

Dale Johnson, The Adoption Alliance, San Antonio, Sam C. Bashara, Law Offices of Sam C. Bashara, P.C., San Antonio, for appellee.

Before CHAPA, C.J., and HARDBERGER and GREEN, JJ.

HARDBERGER, Justice.

This heart-rending case, which ultimately may have no winners, pits the clear language of a statute against equity. Judges on the campaign trail always promise they will uphold the law as written, and not what they wish was written. The separation of powers doctrine requires such obedience. Having so promised, and being so bound by law, we follow the statute.

### Facts

At the heart of the case is a little baby girl, whom in the quaint way of the law, is referred to as Baby Girl Sims: born into this world in San Antonio on August 17, 1995. Her biological mother is Rena Sims. Long before Baby Girl Sims was born, Rena had decided she did not want to keep the child. She responded to an advertisement that had been placed in the *TV Guide* by the future adoptive parents, Michael and Sherry Hollander. She visited them in their Long Island home in New York. Michael owns a diesel repair business; Sherry is a former teacher. They have no children. All indications are they would be, and are, suitable loving parents. Arrangements were lawfully made between the parties through the Adoption Alliance and the adoption plans were finalized. The Hollanders were to take the baby at birth.

There is little to recommend the biological father that is developed in the record. He beat Rena, never married her, abandoned her while she was pregnant, and sent her no money even though he knew she was pregnant. She was very much on her own, and this, no doubt influenced her to give the child up for adoption when she was born.

Rena signed the affidavit of voluntary relinquishment twenty-six (26) hours after the birth. There were no allegations of coercion or lack of understanding. There is no evidence that Rena was suffering from the effects of any medication she may have been given during the birth. The Adoption Alliance filed suit for termination of parental rights on August 22, 1995. Some time after she signed the affidavit, Rena changed her mind. The record reveals that the change of heart was, at least in part, prompted by a phone conversation with the biological father who promised Rena some sort of financial help. Rena Sims filed her answer opposing the termination on August 30, 1995.

The trial court held a hearing on the merits on September 8, 1995. At the hearing, the court ordered that Rena Sims' parental rights be terminated and that the Adoption Alliance be appointed managing conservator. The trial judge signed the order on September 12, 1995. Rena Sims also filed a motion for writ of habeas corpus which was denied on September 29, 1995. The trial court made an express finding of fact that termination of Rena Sims' parental rights was in the best interest of Baby Girl Sims. That finding has not been challenged on appeal. The Hol-

landers have had Baby Girl Sims since she was released from the hospital.

In the past this would have been the end of the matter. But the Texas legislature in 1995 had just passed legislation that required that a biological mother must wait forty-eight (48) hours after the birth of the child before signing an affidavit of relinquishment. The law didn't go into effect until September 1, 1995, so when Rena signed the relinquishment affidavit on August 18 there was no such requirement. But, the legislature had added that this new law, while it didn't take effect until September 1, would apply to pending suits even if they had been filed before September 1st. Thus, this lawsuit.

### Retroactive Application of New Law

In her first point of error, Rena Sims argues that the trial court erred in concluding that the forty-eight (48) hour waiting period for voluntary relinquishment of parental rights did not apply to the affidavit she signed. Rena Sims contends that if the forty-eight (48) hour waiting period applies to her then the affidavit she signed is ineffective and no grounds for termination exist under Texas Family Code § 161.001.

In 1995, the Texas Legislature amended several provisions of the Family Code. Among the changes, the legislature provided that a biological mother must wait forty-eight (48) hours after the birth of her child before signing an affidavit of relinquishment. Specifically, the new law states: "An affidavit for voluntary relinquishment of parental rights must be: (1) signed after the birth of the child, but not before 48 hours after the birth of the child, by the parent, whether or not a minor, whose parental rights are to be relinquished...." Act of June 16, 1995, 74th Leg., R.S., ch. 751, 1995 Tex.Sess.Law Serv. 214 (codified at TEX.FAM.CODE § 161.103). The effective date of the enacted legislation provides as follows: "This Act takes effect September 1, 1995 and applies to a pending suit affecting the parent-child relationship without regard to whether the suit was commenced before, on, or after the effective date of this Act." *Id.* Baby Girl Sims was born on August 17, 1995 and the affidavit of relinquishment was signed on August 18, 1995.

The lawsuit to terminate Rena Sims' parental rights was filed on August 22, 1995. Rena Sims filed a motion for habeas corpus relief on September 1, 1995. The hearing on the merits was held on September 8, 1995. Sims contends that the forty-eight (48) hour waiting period applies to her because the suit was pending on September 1, 1995.

 When a disputed statute is clear and unambiguous, rules of statutory construction are inappropriate and the statute should be given its plain meaning. *Cail v. Service Motors, Inc.,* 660 S.W.2d 814, 815 (Tex.1983); *Ex Parte Roloff,* 510 S.W.2d 913, 915 (Tex.1974). In this case, the unambiguous language of the statute provides that the new law, which includes the forty-eight (48) hour waiting period, applies to any cases "pending" on September 1, 1995. An action or suit is pending from the time of its inception until the rendition of final judgment. *Pan American Bank of Brownsville v. Nowland,* 650 S.W.2d 879, 883 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.). The statute in question specifically provides that it "takes effect September 1, 1995 and applies to a pending suit affecting the parent-child relationship without regard to whether the suit was commenced before, on, or after the effective date of this Act." This language unambiguously covers the present situation. The affidavit of relinquishment was signed on August 18, 1995 some twenty-six hours after the child was born. It really cannot be argued that this lawsuit was not "pending" on September 1, 1995, and we so hold. The termination was not completed until September 8, 1995. These facts are undisputed. The plain meaning of the statute controls. The forty-eight (48) hour waiting period was applicable to the suit to terminate Rena Sims' parental rights.

The Adoption Alliance argues that the legislature never intended the effective date language of this bill to apply to the forty-eight (48) hour waiting period. In support of this argument, The Adoption Alliance points out that the effective date provision in the bill does not specifically refer to the forty-eight (48) hour waiting period. Furthermore, the effective date provision and the forty-eight (48) hour provision are twenty-one (21) pages

apart in the bill itself. *See* Act of June 16, 1995, 74th Leg., R.S., ch. 751, 1995, Tex.Sess. Law Serv. pages 3888–3933 (Vernon). Finally, the forty-eight (48) hour provision was added as an amendment to a much larger bill. For these reasons, The Adoption Alliance argues that the legislature never intended for the forty-eight (48) hour waiting period to apply retroactively. We are not persuaded by these arguments.

■■■ Statutes are presumed to be prospective unless expressly made retroactive. TEX.GOV'T CODE § 311.022 (Vernon 1990); *National Carloading Corp. v. Phoenix–El Paso Express,* 176 S.W.2d 564, 568 (Tex. 1943); *Hockley Co. Seed & Delint. v. Southwestern Inv. Co.,* 476 S.W.2d 38, 39 (Tex.Civ. App.—Amarillo 1971). As previously discussed, the language of the effective date provision makes the forty-eight (48) hour waiting period retroactive. The effective date of the bill applies to the entire bill, including the forty-eight (48) hour waiting period. The Adoption Alliance has failed to cite any authority for the proposition that an effective date provision applies only to some parts of a bill but not others. Furthermore, we know of no law that says an effective date provision does not apply to a particular part of a bill just because they are separated by twenty-one (21) pages or however many pages. This court is not free to ignore the plain meaning of the statute. We conclude that the effective date provision applies to the forty-eight (48) waiting period.

### Constitutionality of Retroactive Law

■■■ The Adoption Alliance argues that if the forty-eight (48) hour waiting period is given retroactive effect then it is in violation of Article I, Section 16 of the Texas Constitution which prohibits retroactive laws. Specifically, the Adoption Alliance argues that once Rena Sims signed the affidavit of relinquishment in favor of a licensed authorized agency, the rights of both the parent and the agency were materially altered. According to The Adoption Alliance, upon execution of the affidavit of relinquishment it was automatically vested with all of the rights of a possessory conservator and with a right to possession of the child superior to the right of the person executing the affidavit. TEX. FAM.CODE § 161.104 (Vernon Supp.1996).

Article I, section 16 of the Texas Constitution provides:

> No bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts, shall be made.

Section 16 seems to prohibit retroactive laws without reservation. However, courts have not given the provision such a literal interpretation. Thus, only when statutes operate retroactively to "destroy or impair" vested rights are they unconstitutional. *Deacon v. City of Euless,* 405 S.W.2d 59, 62 (Tex.1966). The legislature may make retroactive laws altering remedies and procedures so long as these changes do not disturb vested rights. *City of Fort Worth v. Morrow,* 284 S.W. 275, 276 (Tex.Civ.App.—Fort Worth 1926, writ ref'd). The foregoing rules are more easily stated than applied. The term "vested rights" is amorphous. Commentators have concluded that "vested rights" is little more than a conclusion. *See* 1 G. BRADEN, THE CONSTITUTION OF THE STATE OF TEXAS: AN ANNOTATED AND COMPARATIVE ANALYSIS 61–62 (1977); Smith, *Retroactive Laws and Vested Rights,* 5 TEXAS L.REV. 231 (1927); 6 TEXAS L.REV. 409 (1928).

■■ Rena Sims argues that vested rights can only be property rights. This is clearly not the law. As Justice Pope said:

> The Texas Constitution, unlike the Federal Constitution, has a specific prohibition against retroactive laws. The provision in the State Constitution broadly protects rights, *although they may not be rights in property.* A right has been defined to be 'a well-founded claim, and a well-founded claim means nothing more nor less than a claim recognized or secured by law.' *Mellinger v. City of Houston,* 68 Tex. 37, 3 S.W. 249 (1887).

*Texas Water Rights Commission v. Wright,* 464 S.W.2d 642, 648 (Tex.1971) (emphasis added). In deciding whether a retroactive law should be declared unconstitutional, the court in *Wright* was guided by the following principles:

> A number of scholars have endeavored to discover the underlying rationale for the

cases which either uphold or strike down a statute which is attacked as unconstitutionally retroactive. One has said that 'the most important single inquiry to be made, from the standpoint of the individual and aside from the public interest, is whether the retroactive law gives effect to or defeats the bona fide intentions or reasonable expectations of the persons affected....' Smith, Retroactive Laws and Vested Rights, 6 Tex.L.Rev. 409, 427 (1928). Another has said that the common characteristic in the cases holding a statute invalid is the element of surprise, by which a person has changed his position or omitted to change it in reliance upon the law in force. Stimson, Retroactive Application of Law—A Problem in Constitutional Law, 38 Mich.L.Rev. 30 (1939). Still another has said, "Where a statute has become a likely basis for substantial reliance by people who may have changed their positions to reap its benefits, the policy against retroactive change is strong." Greenblatt, Judicial Limitations on Retroactive Civil Legislation, 51 Northwestern L.Rev. 540, 566 (1956).

*Wright,* 464 S.W.2d at 649.

■ When we review the impact of the forty-eight hour waiting period on The Adoption Alliance's right to be possessory conservator of the child in question, we conclude that Texas Family Code § 161.103(a)(1) (48 hour waiting period) is not unconstitutionally retroactive. When considering the elements set forth in *Wright,* it seems doubtful that the Adoption Alliance was surprised by the forty-eight (48) hour waiting period which was to take effect on September 1, 1995. Understandably, the record reveals that the Adoption Alliance made every effort to finalize the adoption before September 1, 1995. No doubt an organization in the adoption business would have been aware of these legislative changes including the "pending" case requirement. Rena Sims, at the time she signed the affidavit on August 18, 1995, crossed out those portions which waived notice for all future proceedings. There is also testimony that Rena Sims had changed her mind by August 19, 1995. Given these circumstances, it is difficult to believe that The Adoption Alliance foresaw no difficulties in completing the termination before September 1, 1995. How can it be said that a statute which the parties know will change in less than two weeks is "a likely basis for substantial reliance?" We conclude that The Adoption Alliance did not have a vested right to the possessory conservatorship of Baby Girl Sims.

■ The provision in issue is more in the nature of a remedial statute. In discussing the distinction between remedies and rights, Justice Pope noted that "[w]hile our precedents recognize and apply the distinction, they also recognize that the two terms are often inseparable." *Wright,* 464 S.W.2d at 648–49. A remedial statute has been defined as "one which introduces a new regulation for the advancement of the public welfare or conducive to the public good, one enacted to afford a remedy, or one intended to correct defects, mistakes, and omissions in the laws of the State. A remedial statute generally addresses remedies or procedures." *Rey v. Acosta,* 860 S.W.2d 654, 657 (Tex.App.—El Paso 1993, no writ). The U.S. Supreme Court has stated that laws governing voluntary termination of parental rights are "procedural safeguards." *Mississippi Band of Choctaw Indians v. Holyfield,* 490 U.S. 30, 36, 109 S.Ct. 1597, 1602, 104 L.Ed.2d 29, 39 (1989). Bearing these definitions in mind, we conclude that providing a forty-eight (48) hour waiting period between birth and the signing of an affidavit of relinquishment of parental rights is a procedural safeguard. Because the law is remedial or procedural in nature it is not in violation of the non-retroactivity clause in the Texas Constitution. *See Phil H. Pierce Co. v. Watkins,* 114 Tex. 153, 263 S.W. 905 (1924); *Rey v. Acosta,* 860 S.W.2d at 657–58.

We sustain all three of Rena Sims' points of error and hold that Texas Family Code § 161.103(a)(1), which provides for a forty-eight (48) hour waiting period between the birth of a child and the signing of an affidavit of relinquishment, is applicable to the present case because it was pending on September 1, 1995. We further hold that the affidavit in this case was invalid because it was signed twenty-six (26) hours after the birth.

We can understand a caring trial court, focused on the best interest of the infant, ruling as she did. But the affidavit of relinquishment was invalid and the trial court erred in terminating the parental rights of Rena Sims on that basis. *See* TEX.FAM.CODE ANN. § 161.001(1) (Vernon Supp.1996). We reverse the trial court's September 12, 1995 order terminating the parental rights of Rena Sims. Finally, we grant Rena Sims' motion for habeas corpus pursuant to Texas Family Code § 157.376 and order that Baby Girl Sims be returned to Rena Sims.

GREEN, Justice, concurring.

The outcome in this case is tragic, and it is with great reluctance that I concur in the result.

The result is wrong when judged on the basis of whether it is in the best interest of the child. The result is wrong when judged on the basis of whether it is fair and just. And the result is wrong when judged on the basis of sympathy and emotion. Indeed, one has only to read the anguished testimony of Mr. and Mrs. Hollander at the habeas corpus hearing to gain an understanding of the horror they were experiencing at the prospect of losing their adopted child. But this case cannot be decided on the basis of such standards. Unhappily, we are instead compelled by our oaths of office to apply the pertinent law to the facts, and we have no discretion in this instance. Under these facts, however, the faceless, unemotional objectivity of the law does not seem well-suited.

Ironically, the result in this case occurs despite the good intentions of those acting to protect against just this result. In adding the 48–hour waiting period to the voluntary relinquishment provision of the termination statute, I am sure the legislature intended to strengthen the finality of the procedure for terminating parental rights. As applied to these facts, however, the legislation instead provides appellant with a legal loophole to escape the consequences of her "irrevocable" affidavit relinquishing her rights to Baby Girl Sims. This is a nightmare scenario for any adoptive family; to the Hollander's, it is now a terrible reality.

The affidavit of relinquishment signed by appellant was valid and enforceable when it was signed on August 18, 1995. Had the termination suit based on the affidavit been disposed of prior to September 1, 1995, appellant would have had no recourse. If the affidavit had been signed twenty-two (22) hours later than it was, Baby Girl Sims would remain the adopted daughter of her new and obviously very devoted and loving parents. It cannot be right that a legal technicality—the difference of a mere twenty-two hours, or even a delay of thirteen days—should have such an enormous impact when speaking of the life of a child. The effect on either the Hollander's or Baby Girl Sims is not at all assuaged by the trite explanation that it is what the law requires.

Justice Hardberger was correct in noting that this is a heart-rending case. The law has failed in this instance to protect the child in whose best interests we purportedly act.