TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00749-CV






The Grocers Supply Company, Inc., Appellant




v.




John Sharp, Comptroller of Public Accounts of the State of Texas, and Dan Morales,

Attorney General of the State of Texas, Appellees






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT


NO. 96-13035, HONORABLE MARGARET COOPER, JUDGE PRESIDING 







 Appellant Grocers Supply Company, Inc. ("Grocers Supply") sued appellees the
Comptroller of Public Accounts and the Attorney General for the State of Texas for a refund of
sales tax previously paid. See Tex. Tax Code Ann. § 112.151 (West 1992). (1) Both parties filed
motions for summary judgment. The trial court granted the Comptroller's motion and denied
Grocers Supply's motion. We will affirm the trial court's judgment.


BACKGROUND

 The complicated chain of events that led to this dispute began in 1961 when the
legislature enacted legislation raising the sales tax rate, but included a limited exemption from that
increase. The exemption read:


There are exempted from the taxes imposed by this Chapter the receipts from the
sale, use or rental of, and the storage use or other consumption in this State of,
tangible personal property (i) used for the performance of a written contract entered
into prior to the effective date of this Chapter.



Act of Aug. 8, 1961, 57th Leg., 1st C.S., ch. 24, art. 1, § 1, 1961 Tex. Gen. Laws 71, 84 (Tex.
Rev. Civ. Stat. Ann. art. 20.04(H), since amended) (emphasis added). In 1965, the supreme court
held that the legislature intended the exemption to apply only to transactions performed to fulfill
contracts other than those between a buyer and a seller. Calvert v. British-American Oil
Producing Co., 397 S.W.2d 839, 843 (Tex. 1965). In other words, a purchase was not tax-exempt unless the buyer bought the item to fulfill his or her contract with a third party. 
Consequently, contracts that meet this criterion have come to be known as "three-party contracts."
 Shortly after the British-American decision, Grocers Supply entered into a contract
with Houston Lighting and Power Company ("HL&P") to purchase electricity. In addition to
paying for the electricity, Grocers Supply periodically paid to HL&P sales tax on the electricity
at the current sales tax rate in effect at the time. HL&P in turn paid the tax to the State. Grocers
Supply admits its contract with HL&P is not a three-party contract. This contract was still in
effect at the time of the summary-judgment hearing in this cause.

 The Comptroller followed British-American consistently, holding that the prior
contract exemption was available only to contracts in existence at the time of the rate increase if
the contracts were between a purchaser and a party other than the seller. Under this policy, the
exemption was not available to contracts between a purchaser and seller.

 In 1984, however, the Comptroller abandoned this policy and began to grant prior
contract exemptions from tax rate increases for two-party contracts.

 With these facts before it, on April 20, 1992, Grocers Supply filed a refund claim
with the Comptroller for part of the sales tax Grocers Supply paid to HL&P from January 1, 1988
through July 31, 1990. The primary bases of Grocers Supply's refund claim were two exemptions
to sales tax rate increases the legislature enacted during the tax period in question. See Act of July
21, 1987, 70th Leg., 2nd C.S., ch. 5, art. 1, part 1, § 1, part 3, § 4, 1987 Tex. Gen. Laws 9, 10
(increasing tax rate from 5.25% to 6%, effective October 1, 1987; exemption not codified),
amended by Act of June 5, 1990, 71st Leg., 6th C.S., ch. 5, §§ 1.01, 1.02, 1990 Tex. Gen. Laws
41 (increasing tax rate from 6% to 6.25%, effective July 1, 1990; exemption not codified) (Tex.
Tax Code Ann. § 151.051(b)). The exemptions Grocers Supply relied upon contained language
almost identical to the exemption enacted in 1961 and interpreted by the supreme court in British-American. (2) Grocers Supply contends that it purchased electricity "for the performance
of" the contract it entered into with HL&P before the effective dates of the rate increases and is
entitled to a refund of $17,856.81, the difference between the tax paid at the increased rates and
the tax Grocers Supply would have paid at previously applicable rates.

 Grocers Supply argues that its refund claim is supported not only by the legislative
exemptions but also an administrative rule of the Comptroller. At the time Grocers Supply filed
its refund claim, the Comptroller's rule applicable to "prior contract exemptions" read in relevant
part, "Taxable items purchased or rented for use in or sold pursuant to the performance of prior
contracts or bids are exempted from the amount of the increase in tax or change in the tax base." 
See 12 Tex. Reg. 2431 (adopted), amended in part by 13 Tex. Reg. 1340 and 15 Tex. Reg. 6197
(34 Tex. Admin. Code § 3.319(b), since amended) (emphasis added). In spite of the British-American decision, the Comptroller was then interpreting this rule and the exemptions as applying
to two-party contracts such as that between Grocers Supply and HL&P. This ill-advised
interpretation has created the controversy now before this Court.

 In May 1992, a matter of weeks after Grocers Supply filed its refund claim, the
Comptroller decided to abandon this construction and interpret the rule and exemptions in
accordance with British-American, thus rendering the exemption unavailable to participants in two-party contracts. Because Grocers Supply's contract with HL&P was not a three-party contract,
this internal decision meant that the refund request of Grocers Supply would ultimately be denied. 
While no public announcement was made, this new interpretation took effect immediately and was
applied to pending refund claims. Inexplicably, the Comptroller did not at once notify Grocers
Supply that its refund claim would be denied and in fact did not advise the public of this policy
change until he placed notices in publications mailed to taxpayers and their representatives in
November 1992 and June 1993. The Comptroller did not formally promulgate his new
interpretation in the form of a rule until several years later. (3) For reasons not apparent in the
record, Grocers Supply's refund request was not formally denied until August 1996, more than
four years after it was filed.

 Grocers Supply exhausted its administrative remedies and then sued the Comptroller
in district court for a refund of the sales tax. See Tex. Tax Code Ann. § 112.151(a)(1), (2) (West
1992). Dissatisfaction with the Comptroller's decision to retroactively enforce his change in
policy is the heart of Grocer's Supply's case. Grocers Supply argues that the Comptroller's
failure to grant a refund is unlawful because it violates the Comptroller's own rule, contravenes
legislative intent, constitutes an unlawful retroactive application of applicable law, (4) and violates
the equal taxation provision of the Texas Constitution. (5) Both parties filed motions for summary
judgment. The trial court granted the Comptroller's motion and denied Grocers Supply's motion. 
Grocers Supply appeals the trial-court judgment in four points of error, advocating the same
arguments it raised before the trial court.


DISCUSSION

 No dispute exists about the facts material to this case. Consequently, the issues are
purely legal. The propriety of summary judgment is a question of law. Natividad v. Alexsis, Inc.,
875 S.W.2d 695, 699 (Tex. 1994). We, therefore, review the trial court's decision de novo and
determine whether the Comptroller was entitled to judgment as a matter of law. See id.; Nixon
v. Mr. Property Management Co., 690 S.W.2d 548-49 (Tex. 1985).

 In addressing Grocers Supply's contentions we must at all times be mindful of two
immutable facts: (1) The supreme court in British-American clearly and unequivocally held that
for a contract to qualify for the exemption it must be between the purchaser and a third party, not
between the seller and the purchaser; and (2) were it not for the Comptroller's change in policy
after Grocers Supply requested the refund, the refund would have been allowed notwithstanding
the British-American decision.

Failure to Follow Previous Interpretation

 In its first point of error, Grocers Supply contends the trial court erred in granting
the Comptroller's motion because the Comptroller "is legally obligated to follow its own rules and
procedure and should not be allowed to retroactively withdraw an exemption it has affirmatively
granted." In support of this point, Grocers Supply first characterizes the Comptroller's policy
change as a contravention of his formally promulgated administrative rule. Grocers Supply then
argues the Comptroller could not properly cease enforcing the administrative rule without formally
repealing or amending the rule and intimates that the Comptroller's policy change constituted an
unconstitutional retroactive application of law. See Tex. Const. art. I, § 16.

 First, we disagree with Grocers Supply's characterization of the Comptroller's
action as a contravention of the rule. The text of the rule itself did not expressly clarify whether
the "prior contract exemptions" applied to the type of sale at issue here or only three-party
contracts. The rule does not speak to the issue any more than the legislative enactments did. The
Comptroller's policy interpreting the rule and exemptions is what clarified the type of sales
covered. (6) Therefore, we reject Grocers Supply's contention that the Comptroller contravened the
rule when he later decided not to grant "prior contract exemptions" for sales that did not concern
contracts with third parties. In reality, the Comptroller did not contravene the rule--he changed
his prior unwritten policy interpreting the rule. What is at issue in this case, then, is the
Comptroller's substitution of one interpretation of his rule for another, not the Comptroller's
contravention of one of his rules promulgated under the notice-and-comment procedures of the
Administrative Procedure Act. See Tex. Gov't Code Ann. §§ 2001.21-.038 (West 1998).

 With that observation, we address the argument that the Comptroller could not
effect his change in policy without doing so in the form of a rule so promulgated. Grocers Supply
does not argue the Comptroller may never informally adopt a policy. Instead, the crux of Grocers
Supply's argument is that the Comptroller may not informally contravene the express terms of a
formally promulgated rule. As discussed above, that is not what the Comptroller did. Grocers
Supply's argument fails because it is based on a false premise and we decline to enlarge this
argument into a general attack on the Comptroller's power to lay down a different interpretation
of a rule in the course of adjudicating a particular claim before him. (7)

Retroactive Application of Law

 We also disagree with Grocers Supply's argument that retroactive application of the
policy change constituted an unlawful retroactive application of law under article I, section 16 of
the Texas Constitution. Under article I, section 16, retroactive application of a law is
unconstitutional when it destroys or impairs vested rights. Corpus Christi People's Baptist
Church, Inc. v. Nueces County Appraisal Dist., 904 S.W.2d 621, 626 (Tex. 1995); State v.
Project Principle, Inc., 724 S.W.2d 387, 390 (Tex. 1987); Ex Parte Abell, 613 S.W.2d 255, 260
(Tex. 1981); General Dynamics Corp. v. Sharp, 919 S.W.2d 861, 866-67 (Tex. App.--Austin
1996, writ denied). As the same principle applies to administrative rules, see Texas Dep't of
Health v. Long, 659 S.W.2d 158, 160 (Tex. App.--Austin 1983, no writ), we conclude it applies
as well to agency policies akin to rules.

 The question of whether a particular right is vested is a difficult one. The supreme
court long ago attempted to describe the difference between vested and nonvested rights:


It must necessarily be held that a right, in a legal sense, exists, when, in
consequence of the existence of given facts, the law declares that one person is
entitled to enforce against another a given claim, or to resist the enforcement of a
claim urged by another. Facts may exist out of which, in the course of time or
under given circumstances, a right would become fixed or vested by operation of
existing law, but until the state of facts which the law declares shall give a right
comes into existence there cannot be in law a right; and for this reason it has been
constantly held that, until the right becomes fixed or vested, it is lawful for the law-making power to declare that the given state of facts shall not fix it, and such
laws have been constantly held not to be retroactive in the sense in which that term
is used.



Mellinger v. City of Houston, 3 S.W. 249, 253 (Tex. 1887), quoted in Ex Parte Abell, 613 S.W.2d
at 261. The court has since further elaborated that:


[A] right cannot be considered a vested right unless it is something more than such
a mere expectation as may be based upon an anticipated continuance of the present
general laws; it must have become a title, legal or equitable to the present or future
enjoyment of a demand or a legal exemption from the demand made by another.



Ex Parte Abell, 613 S.W.2d at 261. The court has explained that when the authority granting the
right has the power and discretion to take that right away, it cannot be said to be a vested right. 
See id. at 262. Finally, the court has noted that "procedural" or "remedial" statutes do not confer
vested, or substantive, rights. See id. at 260; see also City of Sanger v. Miller, 664 S.W.2d 819,
821 (Tex. App.--Austin 1984, no writ). According to these statements, some authority or event
must "fix" or guarantee continued entitlement to something more than a procedure or a remedy
before we will consider that thing to be a vested right.

 In Sims v. Adoption Alliance, the Fourth Court of Appeals considered the difficulty
in applying these factors in determining whether a right has become vested. 922 S.W.2d 213,
216-17 (Tex. App.--San Antonio 1996, writ denied). As noted in Sims, some commentators have
observed that the determination of whether a right is vested is little more than a conclusion. See
id. at 216 (citing 1 G. Braden, The Constitution of the State of Texas: An Annotated and
Comparative Analysis 61-62 (1977); Smith, Retroactive Laws and Vested Rights, 5 Tex. L. Rev.
231 (1927), 6 Tex. L. Rev. 409 (1928)). The court in Sims also listed, however, several
principles from which courts seek guidance: (1) whether the retroactive law gives effect to or
defeats the bona fide intentions or reasonable expectations of the persons affected; (2) the element
of surprise by which a person has changed his or her position or omitted to change it in reliance
upon the law in force; and (3) whether the statute has become a likely basis for substantial reliance
by people who may have changed their positions to reap its benefits. 922 S.W.2d at 217.

 After careful consideration of these principles, we conclude that the Comptroller's
erroneous interpretation in clear contravention of the legislature's purpose in enacting the "prior
contract exemptions" did not create a vested right. Before Grocers Supply ever contracted with
HL&P, the supreme court in British-American had already pronounced a "prior contract
exemption" as being inapplicable to two-party contracts such as Grocers Supply's. It is true that
the Comptroller, some twenty years later, ceased adherence to British-American. However,
nothing guaranteed or "fixed" Grocers Supply's hope or expectation that the Comptroller would
continue to enforce the exemptions in contravention of precedent and legislative intent. In the
absence of some such guarantee any expectation of Grocers Supply that the Comptroller would
continue to defy such precedent and legislative intent cannot be termed reasonable. Grocers
Supply acted solely at its risk in choosing to follow the Comptroller in disregarding the supreme
court's unequivocal interpretation of the legislature's purpose. Furthermore, the Comptroller's
eventual reversion to established precedent should not have come as a surprise to Grocers Supply.

 We hold that the Comptroller's unlawful policy did not create a vested right;
therefore, the Comptroller's change in policy during the pendency of Grocers Supply's refund
claim was not an unconstitutional retroactive application of law. See Ex Parte Abell, 613 S.W.2d
at 260 (when case pending, retroactive change in law does not affect steps previously taken in
case, but all subsequent proceedings in case governed by new law). For the foregoing reasons,
we overrule point of error one.


Doctrine of Legislative Acceptance

 In point of error two, Grocers Supply argues the Comptroller's change in policy
contravened legislative intent. Grocers Supply argues that the legislature, by reenacting the
exemption without change, had tacitly condoned the Comptroller's previous application of the
exemptions to transactions like the one at issue here. This argument is based upon the legislative
acceptance doctrine.

 According to that doctrine, courts should adopt an agency's construction of a statute
if an agency rule interpreting the statute is in effect when the legislature amends the law without
making substantial change. Central Power & Light Co. v. Sharp, 919 S.W.2d 485, 489 (Tex.
App.--Austin 1996), writ denied per curiam, 960 S.W.2d 617 (1997); Quorum Sales, Inc. v.
Sharp, 910 S.W.2d 59, 64 (Tex. App.--Austin 1995, writ denied). This doctrine does not,
however, require us to adopt an unwritten policy an agency uses to implement one of its own
rules, especially when the agency equivocates on the policy over the course of time. Texas Citrus
Exchange v. Sharp, 955 S.W.2d 164, 171 (Tex. App.--Austin 1997, no writ).

 Even if we were to attempt to apply the doctrine to this case, we would not reach
the result Grocers Supply advocates. If the Comptroller, over time, was uncertain in his position,
the supreme court could not have written with more certainty:


It is clear that the exemption statute means that the written contract therein referred
to must be one between the purchaser and a third party and not between the seller
and the purchaser.



British-American, 397 S.W.2d at 843. The legislature never changed the "prior contract
exemption" language in subsequent enactments, even those upon which Grocers Supply relies. 
We cannot conclude that the legislature's reenactment of the exemptions without change constitutes
an acceptance of an interpretation contrary to the precedent. It is just as likely, if not more likely,
that the legislature's reenactment without change expresses an approval of the long-standing
judicial construction of the statutory language. The legislative acceptance doctrine provides no
guidance in this case. Therefore, we overrule point of error two.


Unequal Taxation

 In point of error three, Grocers Supply argues the Comptroller's retroactive
application of its policy change constituted unequal taxation in violation of article VIII, section
1(a) of the Texas Constitution. The mandate that all taxes be equal and uniform requires only that
all persons falling within the same class be taxed alike. Sharp v. Caterpillar, Inc., 932 S.W.2d
230, 240 (Tex. App.--Austin 1996, writ denied) (citing Hurt v. Cooper, 110 S.W.2d 896, 901
(Tex. 1937)). We will uphold a tax classification unless it has no rational basis. Id. In reviewing
taxation laws, we indulge a strong presumption of constitutional validity. Id. at 240 (citing Vinson
v. Burgess, 773 S.W.2d 263, 266 (Tex. 1989)).

 Grocers Supply contends that the Comptroller did not tax taxpayers in the same
class equally because some taxpayers received an exemption for transactions that occurred during
the tax period at issue while other taxpayers did not. Grocers Supply contends there is no
distinction between those who received the exemption and those who did not. We disagree. First,
the Comptroller treated all taxpayers equally according to the time their exemption claims were
adjudicated. That is, the claims that were adjudicated during the interim policy were all granted;
the claims that were adjudicated after the policy change were all denied. We find no evidence that
the Comptroller would randomly pick and choose the claims he wished to grant and deny without
regard to the policy in effect at the time he was adjudicating the claims. Moreover, the
Comptroller's "classification" of taxpayers' claims according to time of adjudication had a rational
basis. The Comptroller decided to deny claims like Grocers Supply's after the policy change
because that action gave the most effect to legislative intent and judicial precedent. We cannot say
the Comptroller's decision to bring his policy into compliance with the statute he was charged with
administering was irrational or unreasonable. Consequently, we overrule point of error three.

 Point of error four concerns whether the Comptroller effectively cured any unequal
taxation that resulted from its policy change. Our disposition of point of error three renders this
point moot. We, therefore, overrule point of error four.


CONCLUSION

 In resolving the claims of Grocers Supply in favor of the Comptroller, we should
not be construed as endorsing or approving the manner in which the Comptroller has dealt with
exemption requests such as that of Grocers Supply. The record before us does not reflect why the
Comptroller from time to time varied his position, particularly in light of the supreme court's
straightforward pronouncement of legislative intent. These actions do not foster the confidence
and certainty in government upon which the people of this State are entitled to rely. Our criticism
of the Comptroller's procedures, however, does not lead to the result that his ultimate decision was
contrary to law.

 Having overruled all Grocers Supply's points of error, we affirm the judgment of
the trial court.



 _____________________________________________

 Lee Yeakel, Chief Justice

Before Chief Justice Yeakel, Justices Aboussie and Jones

Affirmed

Filed: August 13, 1998

Publish

1. The Tax Code required Grocers Supply to sue both the Comptroller and the Attorney
General. See Tex. Tax Code Ann. § 112.151(b) (West 1992). The interests of the Comptroller
and the Attorney General do not diverge in this case. For convenience, we will refer to both
collectively as "the Comptroller."
2. The 1987 exemption read in relevant part:


(a) There are exempted from the increase in the rate of the limited sales, excise, and
use tax made by this article . . . the receipts from the sale, use, or rental and the
storage, use, or consumption in this state of taxable items, if:


 (1) the items are used for the performance of a contract entered into on or before
July 21, 1987, if the contract is not subject to change or modification by
reason of the tax rate increase; or the items are used pursuant to an obligation
of a bid or bids [subject to similar limitations] . . . .


(Emphasis added.)


The 1990 exemption read in relevant part:


There are exempted from the increase in the rate of the limited sales, excise, and use
tax made by this Act the receipts from the sale, use, or rental and the storage, use, or
consumption in this state of taxable items, if:


 (1) the items are used:


 (A) for the performance of a contract entered into before the effective date
of this Act, and the contract is not subject to change or modification
because of the tax rate increase made by this Act; or


 (B) pursuant to an obligation of a bid [subject to similar limitations] . . . .


(Emphasis added.)
3. The Comptroller formally amended his rule to state his new policy in 1995. See 34 Tex.
Admin. Code § 3.319 (1997).
4. The provision of the Texas Constitution that forbids certain retroactive applications of law
is article I, section 16. Grocers Supply never cited that provision in its pleadings, motion, or
response. However, Grocers Supply's arguments sound in this constitutional theory, and the
Comptroller addressed the theory in its motion for summary judgment.
5. Tex. Const. art. VIII, § 1(a).
6. We acknowledge that the Comptroller stated a policy when he adopted the rule. Specifically,
in his comments to the rule adoption he stated his intent in promulgating the rule was to make
clear that the exemption applied to two-party contracts as well as three-party contracts. However,
we disagree that the Comptroller accomplished his goal of clarifying this policy by adopting the
rule. Moreover, the statement of policy in the comments to the rule adoption does not constitute
part of the rule itself. Cf. Destec Energy Inc. v. Houston Lighting & Power Co., 966 S.W.2d 792,
795 n.3 (Tex. App.--Austin 1998, no pet.) (comments to statute persuasive but not binding); High
Plains Natural Gas Co. v. Railroad Comm'n of Tex., 467 S.W.2d 532, 539 (Tex. Civ.
App.--Austin 1971, writ ref'd n.r.e.) (caption to statutory enactment has no enacting force).
7. We refer to an administrative agency's discretionary power to formulate and enforce policy
in the course of adjudicating a contested case, in lieu of doing so through notice-and-comment rule
making under the procedures prescribed in sections 2001.021-.038 of the Administrative
Procedure Act. Subject to statutory and constitutional considerations, most agencies have such
power if they possess both rule making and adjudicatory power. See generally Amarillo Indep.
Sch. Dist. v. Meno, 854 S.W.2d 950 (Tex. App.--Austin 1993, writ denied); Public Util.
Comm. v. Texland Elec. Co., 701 S.W.2d 261 (Tex. App.--Austin 1985, writ ref'd n.r.e.);
Madden v. Texas Bd. of Chiropractic Examiners, 663 S.W.2d 622 (Tex. App.--Austin 1983, writ
ref'd n.r.e.).


 If an agency adopts a new policy in the course of adjudicating a contested case, it does not
mean that the new policy is a "rule" in the sense that it must thenceforth, without more, be obeyed
by the affected public as would be the case with a rule duly promulgated under sections 2001.021-.038 of the Administrative Procedure Act. See generally National Labor Relations Bd. v. Wyman-Fordon Co., 394 U.S. 759, 765-66 (1969); see also Don Walker, Ad Hoc Adjudication is Not Rule
Making, 4 Tex. Admin. L. J. 31 (1996).


Regular">Publish

1. The Tax Code required Grocers Supply to sue both the Comptroller and the Attorney
General. See Tex. Tax Code Ann. § 112.151(b) (West 1992). The interests of the Comptroller
and the Attorney General do not diverge in this case. For convenience, we will refer to both
collectively as "the Comptroller."
2. The 1987 exemption read in relevant part:


(a) There are exempted from the increase in the rate of the limited sales, excise, and
use tax made by this article . . . the receipts from the sale, use, or rental and the
storage, use, or consumption in this state of taxable items, if:


 (1) the items are used for the performance of a contract entered into on or before
July 21, 1987, if the contract is not subject to change or modification by
reason of the tax rate increase; or the items are used pursuant to an obligation
of a bid or bids [subject to similar limitations] . . . .


(Emphasis added.)


The 1990 exemption read in relevant part:


There are exempted from the increase in the rate of the limited sales, excise, and use
tax made by this Act the receipts from the sale, use, or rental and the storage, use, or
consumption in this state of taxable items, if:


 (1) the items are used:


 (A) for the performance of a contract entered into before the effective date
of this Act, and the contract is not subject to change or modification
because of the tax rate increase made by this Act; or


 (B) pursuant to an obligation of a bid [subject to similar limitations] . . . .


(Emphasis added.)
3. The Comptroller formally amended his rule to state his new policy in 1995. See 34 Tex.
Admin. Code § 3.319 (1997).
4. The provision of the Texas Constitution that forbids certain retroactive applications of law
is article I, section 16. Grocers Supply never cited that provision i