# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-18-00238-CV[1]

---

**Enerlex, Inc., Appellant**

**v.**

**Glenn Hegar, Texas Comptroller of Public Accounts, Appellee**

---

### FROM THE 345TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-14-005105, THE HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

Appellant Enerlex, Inc. is a business that buys mineral interests throughout the United States. It acquired mineral interests located in Texas from William Wilson, III, conveyed through a mineral deed signed by Wilson in 2013.[2] The deed, which governed minerals that might be produced from a tract of land described as "Block C, Section, L & S V Survey, Ab. 297," gave Enerlex rights to "all royalties, accruals and other benefits, if any, from all Oil and Gas heretofore or hereafter run." In 2014, Enerlex sent an Unclaimed Property General

---

[1] The notice of appeal was originally filed in March 2016. The Supreme Court of Texas ordered the case transferred to the Eighth Court of Appeals pursuant to its docket equalization authority, *see* Tex. Gov't Code § 73.001; Misc. Docket No. 16-9040 (Tex. Mar. 22, 2016), and this Court transferred the case in April 2016. In April 2018, the Supreme Court of Texas ordered that this and other cases be transferred back to this Court from the Eighth Court, and we consider the appeal pursuant to that order. *See* Misc. Docket No. 18-9054 (Tex. Apr. 12, 2018).

[2] Wilson actually signed two mineral deeds in favor of Enerlex—one in 2011 and one in 2013, providing a more complete legal description. We will refer to the 2013 deed.

Claim form to appellee Glenn Hegar, Texas Comptroller of Public Accounts, seeking $4,652.91 in unclaimed royalty payments for Wilson's mineral interests, which had been sent to the State between 2001 and 2010. The Comptroller denied the claim, explaining that Enerlex had provided proof "of a transfer of the mineral interests" from Wilson to Enerlex but not "of a transfer of the proceeds of those mineral interests arising prior to the transfer of the mineral interests to Enerlex." Enerlex then filed the underlying suit appealing from that denial and seeking a declaration that it was entitled to the funds. After Enerlex and the Comptroller filed competing motions for summary judgment, the trial court granted the Comptroller's and denied Enerlex's. As explained below, we affirm the trial court's judgment.

### STANDARD OF REVIEW AND STATUTORY FRAMEWORK

In construing a statute, our primary objective is to give effect to the legislature's intent. *Colorado County v. Staff*, 510 S.W.3d 435, 444 (Tex. 2017). "We seek that intent first and foremost in the statutory text, and where text is clear, text is determinative of intent." *Id*. (cleaned up). The plain meaning of the statutory language is the best expression of legislative intent unless context shows that a different meaning should be applied or the plain meaning leads to absurd or nonsensical results. *Id*. In discerning legislative intent, we will limit our consideration to the statutory language unless it "is susceptible to more than one reasonable interpretation." *Id*. In other words, "[w]hen a statute is clear and unambiguous, we do not resort to extrinsic aides such as legislative history to interpret the statute." *City of Round Rock v. Rodriguez*, 399 S.W.3d 130, 137 (Tex. 2013). When, as here, the statutory-construction issues are presented in the context of cross-motions for summary judgment based on undisputed

2

material facts, we determine all issues presented and render the judgment the trial court should have rendered. *Staff*, 510 S.W.3d at 444.

Title 6 of the property code governs unclaimed property. *See generally* Tex. Prop. Code §§ 71.001-77.308. In the case of unclaimed or abandoned property, such as the Wilson royalty payments,[3] the property holder must prepare a yearly report that identifies the owner and provides his last known address and other information, if such information is known to the holder; in the case of mineral proceeds, the holder must also provide certain information about the well or lease from which the mineral proceeds resulted. *Id*. § 74.101. The holder must then deliver the report and the property to the Comptroller. *Id*. § 74.301. The Comptroller is required to attempt to provide notice to the owner, *id.* § 74.201, and to compile a public list each year providing the owners' names, their last known addresses, and the amounts credited to each account, *id.* § 74.307. To obtain abandoned property held by the State, a person files a claim with the Comptroller, who, after reviewing the claim and determining that it is valid, must deliver the property to the claimant. *Id*. § 74.501. As relevant here, the Comptroller "may not pay" a claim to "a creditor, a judgment creditor, a lienholder, or an assignee of the reported owner or of the owner's heirs." *Id*. § 74.501(e)(1).

## DISCUSSION

"Reported owner" is not defined in the unclaimed-property provisions, but from the context of Title 6, it is apparent that the "reported owner" refers to the person believed by the

---

[3] The property here is "abandoned," as opposed to "escheated." Property is abandoned if, for more than three years, the holder does not know the owner's location and the owner has not asserted a claim or an act of ownership. Tex. Prop. Code § 72.101(a). Escheated property belongs to an individual who dies intestate and without heirs, *id*. § 71.001(a), in which case title vests in the State after a legal proceeding, *id*. §§ 71.001(b), .101-.109 (escheat proceedings).

holder to be the property owner—the person who "from the records of the holder of the property, appears to be the owner of the property" or "any person who is entitled to the property." *Id.* § 74.101(c). In other words, the reported owner is the person named as owner by the property holder in the report it provides to the Comptroller at the time it turns the unclaimed property over to the State. *See id.* §§ 74.101 (property holder must make report listing contact information for such person), .301 (delivery of property to Comptroller). The Comptroller must pay a validated unclaimed-property claim to the reported owner (or his heirs), *see id.* § 74.501(a), (b), (d), but section 74.501(e) states unequivocally that the Comptroller "may not pay" an unclaimed-property claim to "an assignee of the reported owner," *id.* § 74.501(e).

Although "assignee" is not defined in Title 6, its ordinary meaning is easily ascertained. Black's Law Dictionary defines assignee as "[o]ne to whom property rights or powers are transferred by another." *Assignee*, Black's Law Dictionary 136 (9th ed. 1991); *see id.* (defining "assignment" as "[t]he transfer of rights or property"); *see also Compact Oxford English Dictionary* 80 (2d ed. 1994) (assignee is "[o]ne to whom a right or property is legally transferred or made over"). Our sister court has explained that assignee "is commonly understood to mean a person to whom a right or liability is legally transferred or a person appointed to act for another." *Metropolitan Life Ins. Co. v. Structured Asset Funding, LLC*, 501 S.W.3d 706, 715 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (cleaned up); *see also Great-W. Life & Annuity Ins. Co. v. Texas Att'y Gen. Child Support Div.*, 331 S.W.3d 884, (Tex. App.—Austin 2011, pet. denied) (discussing lottery winner's assignment of future installment payments in exchange for lump-sum payment). And, as observed earlier, when interpreting statutory language that is clear and unambiguous, we will limit our consideration to the plain meaning of that language without resorting to legislative history or other extrinsic aides. *Staff,*

510 S.W.3d at 444; *Rodriguez*, 399 S.W.3d at 137; *see Southwest Royalties, Inc. v. Hegar*, 500 S.W.3d 400, 405 (Tex. 2016) (undefined statutory term "is typically given its ordinary meaning" if consistent with other statutory terms and context).

The transaction between Enerlex and Wilson had the effect of making Enerlex the owner of the right to royalties from the date of the sale forward. In other words, Enerlex will now be the reported owner, and any unclaimed royalties that might be deposited with the Comptroller from the date of the deeds forward will be paid to Enerlex. However, as far as the unclaimed royalties held by the Comptroller (from 2001 through 2010) are concerned, at the time they were given over to the Comptroller, Wilson was the reported owner. Enerlex argues that by signing the deeds, Wilson assigned his rights to that unclaimed property to Enerlex. However, regardless of who owns the right to the sums held by the Comptroller, the plain language of section 74.501(e) bars the Comptroller from paying an unclaimed-property claim submitted by the reported owner's assignee.[4] *See* Tex. Prop. Code § 74.501(e). Instead, those funds can only be paid to the reported owner—Wilson. *See id.* § 74.501(d). We overrule Enerlex's third issue on appeal.

In addition, Enerlex argues that section 75.002 of the property code supports its right to the unclaimed royalty payments. Section 75.002 provides that a person who purchases mineral proceeds—defined as "all obligations to pay resulting from the production and sale of

---

[4] As noted by the Office of the Attorney General in 2012, in answer to the Comptroller's request for an opinion as to who may receive direct payments of unclaimed-property proceeds, "a reasonable construction of the word 'assignee' could include a person to whom property is transferred based on a purchase of the property for value." Tex. Att'y Gen. Op. No. GA-0906, 2012 WL 252386, at *1 (2012). The opinion further observed that the Comptroller's interpretation of a statute it was charged with implementing would be entitled to serious consideration, provided the interpretation was reasonable and not in conflict with the statutory language. *Id.* (quoting *Railroad Comm'n of Tex. v. Texas Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 624 (Tex. 2011)).

minerals," *id.* § 75.001(a)—or "an owner whose name has been reported" to the Comptroller must prove that "the transfer is executed by the reported owner" or his agent, *id.* § 75.002. However, this case does not concern "obligations to pay"; it concerns royalties already paid by the mineral producer and unclaimed by Wilson. As noted earlier, assuming Enerlex is able to satisfy section 75.002's requirements, it will be considered the owner of the right to royalties as those "obligations to pay" arise. We overrule Enerlex's sixth issue.

Because we have held that the plain language of section 74.501(e) bars the Comptroller from paying the claim filed by Enerlex as assignee, the parties' intentions in their transaction are not controlling in this appeal. We therefore need not consider Enerlex's first, second, and seventh appellate issues,[5] which concern the circumstances of its purchase of Wilson's royalty interests. Because the statutory language is unambiguous, we cannot look to extrinsic aids, *see Staff*, 510 S.W.3d at 444; *Rodriguez*, 399 S.W.3d at 137, and thus overrule Enerlex's fourth issue, which argues for a different interpretation of the plain statutory language based on the legislative history surrounding section 74.501(e).

Finally, we disagree that the Comptroller's recent interpretation has violated Enerlex's constitutional rights. Throughout its briefing, Enerlex emphasizes the fact that the Comptroller paid similar claims for more than a decade before changing its interpretation of the statute—a fact the Comptroller does not dispute. However, we decline to hold that an agency is estopped from changing course when it determines that its earlier interpretation of a statute was

---

[5] In its seventh issue, Enerlex argues that the effect of the Comptroller's interpretation and the trial court's judgment is that "assignee" and "purchaser for value" are treated as identical. Instead, Enerlex argues that it should be considered to have owner status because it acquired Wilson's royalty interests directly from him rather than "indirectly in a 'secondary' transaction (e.g., foreclosure or execution on collateral)." While we understand the distinction being drawn by Enerlex, the language chosen by the legislature does not allow for such nuance. Instead, we must simply draw a distinction between a "reported owner" and an "assignee."

erroneous and its new interpretation is solidly grounded in the plain language chosen by the legislature. *See Grocers Supply Co. v. Sharp*, 978 S.W.2d 638, 644 (Tex. App.—Austin 1998, pet. denied). An earlier, incorrect interpretation of the law cannot be considered to give rise to a vested right. *See id.* ("We hold that the Comptroller's unlawful policy did not create a vested right; therefore, the Comptroller's change in policy during the pendency of Grocers Supply's refund claim was not an unconstitutional retroactive application of law."). Furthermore, the Comptroller's interpretation of section 74.501(e) in no way interferes with Enerlex's contractual rights against Wilson, nor does it interfere with Wilson's ability to sell and assign his rights to unclaimed property—it simply states that the assignee may not obtain the unclaimed property from the Comptroller. In such a case, the assignee must look to its contract with the property owner rather than the Comptroller's unclaimed-property process. *See In re Phillips*, 496 S.W.3d 769, 774 (Tex. 2016) (orig. proceeding).

## CONCLUSION

Having overruled Enerlex's issues on appeal, we affirm the trial court's summary judgment in favor of the Comptroller.

_____

Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Goodwin and Kelly

Affirmed

Filed:   August 7, 2019

7