# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---
## NO. 03-04-00342-CV
---

First American Title Insurance Company and Old Republic National
Title Insurance Company, Appellants

**v.**

Carole Keeton Strayhorn, Comptroller of Public Accounts of the State of Texas and
Gregg Abbott, Attorney General of the State of Texas, Appellees

---
### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT
### NO. GN301692, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING
---

## O P I N I O N

First American Title Insurance Company and Old Republic National Title Insurance Company sell title insurance in Texas but are incorporated in other states. They are seeking to recover taxes they argue were unlawfully imposed upon them. Texas imposes a tax on the amount of premium collected from title insurance policies. In addition, foreign title insurance companies, like First American and Old Republic, are required to pay an additional tax if their states of origin impose financial burdens on Texas insurance companies selling title insurance in the foreign states that are higher than the financial burdens Texas imposes upon foreign insurance companies selling title insurance here. This additional tax is called a retaliatory tax.

Previously title insurance companies have been allowed to include 100% of the total premium tax paid as part of their imposed financial burden for the purpose of determining whether

a retaliatory tax needs to be paid. However, the Comptroller changed this previous interpretation and concluded that, because insurance companies pay only 15% of the premium tax, insurance companies should include only 15% of the premium tax as part of their total imposed financial burden. Under this new interpretation, foreign title insurance companies will be required to pay significantly more in retaliatory taxes.

First American and Old Republic contend that the Comptroller's new interpretation is wrong and seek to recover taxes they claim were unlawfully assessed under the Comptroller's new interpretation.[1] The district court granted summary judgment in favor of the Comptroller, and we will affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

First American is a California-based title insurance company, and Old Republic is a Minnesota-based title insurance company. Title insurance companies ("insurers") are responsible for issuing title insurance policies, for insuring title risks, and for paying claims and providing defenses to claims if necessary. Both First American and Old Republic engage in title insurance business within the State of Texas.

First American issues title policies through title agents and through direct operations. Old Republic issues title policies through title agents alone. Title agents are legal entities, such as corporations, that are separate from insurers and that are licensed to close real estate title insurance transactions on behalf of one or more insurers. Title agents may be affiliated with an insurer or may

---

[1] Both First American and Old Republic filed suits seeking to recover taxes they had paid. After the district court granted summary judgment in favor of the Comptroller, both cases were consolidated into this appeal.

be completely independent. If an insurer becomes licensed as a direct operator, then it may close insurance transactions on its own without an agent.

Article 9.59 of the insurance code ("the premium tax statute") requires title insurers to remit to the state a tax on insurance premiums collected while engaged in business in Texas. *See* Tex. Ins. Code Ann. art. 9.59 (West Supp. 2004-05), *repealed by* Act of April 30, 2003, 78th Leg., R.S., ch. 1274, § 26(b)(4), 2003 Tex. Gen. Laws 3611, 4139 (effective April 1, 2005). In addition, article 21.46 of the insurance code ("the retaliatory tax statute") requires the imposition of an additional tax on foreign insurers doing business within Texas if the foreign state imposes financial burdens on Texas-based insurers doing business in the foreign state that are higher than the financial burdens Texas places on the foreign state's insurers doing business here. *See* Tex. Ins. Code Ann. art. 21.46 (West Supp. 2004-05), *repealed by* Act of April 30, 2003, 78th Leg., R.S., ch. 1274, § 26(b)(4), 2003 Tex. Gen. Laws 3611, 4139 (effective April 1, 2005). The principal purpose of a retaliatory tax law is to facilitate the ability of insurers to conduct business across state lines by deterring states from enacting discriminatory or excessive taxes against foreign insurers. *See Western & S. Life Ins. Co. v. State Bd. of Equalization of Cal.*, 451 U.S. 648, 668 (1981).

In the late 1990s, the Comptroller took the position that the premium tax statute required title insurance agents to pay a portion of the premium taxes due and that the payment of title insurance premium taxes is not solely the obligation of insurers. Previously, insurers had been allowed to include 100% of the premium tax paid as the insurers' tax burden for the purposes of determining whether a retaliatory tax would be imposed on an insurer. Under the new calculation method, an insurer may only count 15% of the premium tax as its financial burden when determining the amount of retaliatory taxes due, if any.

3

After auditing First American's 1998-2001 insurance tax reports, the Comptroller assessed a fee of $175,383.77 in retaliatory taxes and interest against First American for the 2001 tax year,[2] which First American paid in March 2003 under protest. In addition, First American paid, under protest, $1,257,196.99 in retaliatory taxes for 2002. Similarly, after an audit, the Comptroller assessed retaliatory taxes against Old Republic. Old Republic paid, under protest, $219,626.40 as retaliatory taxes for 2002.

## PROCEDURAL HISTORY

Appellants filed separate lawsuits against the Comptroller and the Attorney General of Texas (cumulatively the "Comptroller") to recover what they claim were unlawfully assessed retaliatory taxes that were paid under protest. The appellants and the Comptroller both filed cross-motions for summary judgment in the separate cases, which the trial court heard simultaneously. The trial court granted summary judgment in favor of the Comptroller in both cases. Both appellants appealed the decision of the trial court, and the two cases were consolidated into this appeal.

## STANDARD OF REVIEW

The standards for review of a traditional summary judgment are well established: the movant must show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law; in deciding whether there is a disputed material fact issue precluding summary judgment, the court must take evidence favorable to the nonmovant as true, and the court must indulge every reasonable inference in favor of the nonmovant and resolve any doubts in the

---

[2] The tax years of 1998-2000 are not at issue in this case.

4

nonmovant's favor. *Sergeant Enters., Inc. v. Strayhorn*, 112 S.W.3d 241, 245 (Tex. App.—Austin 2003, no pet.) (citing *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985)). We review the trial court's decision to grant summary judgment de novo. *Id.* (citing *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1994)).

Generally, a party cannot appeal the denial of a motion for summary judgment because it is an interlocutory order and, thus, not appealable. *Id.* (citing *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625 (Tex. 1996)). However, when both parties move for summary judgment and the district court grants one motion and denies the other, the unsuccessful party may appeal both the grant of the prevailing party's motion and the denial of its own. *Id.* (citing *Holmes v. Morales*, 924 S.W.2d 920, 922 (Tex. 1996)). In such a case, we will review the summary judgment evidence offered by both sides, determine all questions presented, and render the judgment the trial court should have rendered. *Id.* (citing *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000); *Commissioners Court v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997)). Because the district court did not state the basis for granting summary judgment, the appellants must negate all grounds that support the judgment. *Id.* (citing *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 381 (Tex. 1993)). However, if the appellants fail to negate each ground on which the judgment may have been rendered, we must uphold the summary judgment. *Id.* (citing *Carr*, 776 S.W.2d at 569).

This case involves interpreting the title insurance premium tax statute and the retaliatory tax statute, and, therefore, we apply a de novo standard. *Lopez v. Texas Workers' Comp. Ins. Fund*, 11 S.W.3d 490, 494 (Tex. App.—Austin 2000, pet. denied) (citing *Johnson v. City of Fort Worth*, 774 S.W.2d 653, 656 (Tex. 1989)). When construing a statute, the court must construe the

5

statute as written and must, if possible, determine the legislature's intention from the language that was used in the statute. *Del Indus., Inc. v. Texas Workers' Comp. Ins. Fund,* 973 S.W.2d 743, 745 (Tex. App.—Austin 1998), *aff'd*, 35 S.W.3d 591 (Tex. 2000). When determining legislative intent, the entire act, not isolated portions of the act, must be considered. *Jones v. Fowler*, 969 S.W.2d 429, 432 (Tex. 1998). Courts should first look to the plain meaning of the words in the statute and, if the meaning is unambiguous, interpret the statute so that it comports with the plain meaning expressed. *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003). Every word, phrase, and expression used in a statute should be read as if it were deliberately used. *See Gables Realty Ltd. P'ship v. Travis Cent. Appraisal Dist.*, 81 S.W.3d 869, 873 (Tex. App.—Austin 2002, pet. denied). If two statutes are in pari materia or address the same subject, then an effort should be made to harmonize and give effect to both statutes. *Breeding v. State*, 762 S.W.2d 737, 739 (Tex. App.—Amarillo 1988, pet. ref'd) (citing *Cheney v. State*, 755 S.W.2d 123 (Tex. Crim. App. 1988)).

When enacting a statute, the legislature is presumed to have intended to comply with both the state and the federal constitutions. *Brady v. Fourteenth Court of Appeals*, 795 S.W.2d 712, 715 (Tex. 1990). Therefore, when construing a statute, courts should interpret a statute so that the statute's meaning is consistent with all constitutional requirements if possible. *Id.* In addition, when an administrative agency is charged with a statute's enforcement and also construes the statute, the agency's construction of the statute is entitled to serious consideration as long as the construction is reasonable and does not contradict the plain meaning of the statute. *Tarrant Appraisal Dist. v. Moore*, 845 S.W.2d 820, 823 (Tex. 1993).

**STATUTORY FRAMEWORK**

Before addressing the merits of the appellants' claims, it will be helpful to describe the statutory scheme in question in this case and the Comptroller's current interpretation of it. In 1907, the legislature first imposed a title insurance premium tax upon insurers. *See* Act of May 16, 1907, 30th Leg., 1st C.S., ch. 18, § 8, 1907 Tex. Gen. Laws 479, 482. In 1987, the insurance premium tax statutes were amended. Act of June 17, 1987, 70th Leg., R.S., 1987 Tex. Gen. Laws 3610, 3638-40 (codified as Tex. Ins. Code Ann. art. 9.59). As part of the amendment, a provision calling for the division of premium between insurers and title agents and a provision requiring insurers to obtain an agent's portion of the premium tax and to remit it to the state were added. *Id*. The relevant portions of the premium tax statute read as follows:

Sec. 1. Each title insurance company receiving premiums . . . shall pay to the Comptroller a tax on those premiums . . . .

Sec. 2. In this article premium means the total amount of premiums received for the taxable year on title insurance written on property located in this state . . . .

. . .

Sec. 4. There is imposed on all premium on title insurance an annual tax equal to 1.35 percent.

Sec. 5. Each title insurance company that is liable under this article to remit tax on premium shall file a tax return annually . . . .

. . .

Sec. 8(a) Title insurance companies and title insurance agents *subject to the tax levied by this article may not be required to pay any additional tax in proportion to their gross premium receipts* levied by this state or any

7

county or municipality except as otherwise provided by this code and the Labor Code. . . .

(b) The premium tax is levied on all amounts defined to be premium in this Chapter, whether paid to the title insurance company or retained by the title insurance agent, such tax being in lieu of the tax on the premium retained by the agent. The State of Texas facilitates the collection of the premium tax on the premium retained by the agent by setting the division of the premium between insurer and agent *so that the insurer receives the premium tax due on the agent's portion of the premium and remits it to the State*.

Tex. Ins. Code Ann. art. 9.59 (West Supp. 2004-05) (emphasis added).

The premium tax statute exempts title agents, which are subject to taxation under the statute, from paying an *additional* tax based on gross premium receipts. *Id.* § 8(a). In addition to the section 8(a) exemption, section 171.052 of the Texas Tax Code exempts agents and insurers from franchise taxes because both are required to pay a tax based on gross premium receipts. Tex. Tax Code Ann. § 171.052 (West Supp. 2004-05). Specifically, section 171.052 provides as follows:

An insurance organization, title insurance company, or title insurance agent authorized to engage in insurance business in this state now required to pay an annual tax under Chapter 4 or 9, Insurance Code, measured by its gross premium receipts is exempted from the franchise tax. . . .

*Id.*

The premium tax statute also states that premiums collected are divided between insurers and agents in such a way that insurers receive the agents' shares of the premium tax in the amount collected from the agents. Tex. Ins. Code Ann. art. 9.59 § 8(b). How the premium is divided between insurers and agents and what premium rates are charged are both questions decided

8

by the Texas Department of Insurance (the "Department"). *See* Tex. Ins. Code Ann. arts. 9.07(b), (c) and 9.30(B)(1) (West Supp. 2004-05). In determining reasonable premium rates, the Department is required to consider all relevant income and expenses of title agents and insurers. *Id.* art. 9.07(b), (c). Between 2001 and 2002, the time period in issue in this case, the Department allowed title agents to keep 85% of the premiums collected from policyholders and required title agents to remit 15% of the premiums to title insurers.[3] 28 Tex. Admin. Code § 9.1 (2004) (adopting Basic Manual of Rules, Rates, and Forms for the Writing of Title Insurance in Texas) (*available at* www.tdi.state.tx.us/company/titlem4d.html#P-23).

In addition to paying premium taxes, insurers from a foreign state doing business in Texas may be required to pay a retaliatory tax. The retaliatory tax statute imposes an additional tax upon a foreign insurer doing business in the state of Texas if the foreign state imposes financial burdens on Texas-based insurers doing business in the foreign state that are higher than the financial burdens Texas places on the foreign state's insurers doing business in Texas. The relevant portion of the retaliatory tax statute reads as follows:

> Whether by the laws of any state or territory of the United States any taxes, including maintenance or similar regulatory fees, income and corporate franchise, licenses, fees, fines, penalties, deposit requirements or other obligations, prohibitions or restrictions are imposed upon any insurance company that is organized in this State and licensed and is doing business or that may do business in such other state or territory which, in the aggregate are in excess of the aggregate of the taxes, including maintenance or similar regulatory fees, income and corporate franchise, licenses, fees, fines, penalties, deposit requirements or other obligations, prohibitions or restrictions directly imposed upon a similar insurance company of such other state

---

[3] In this appeal, we are not faced with and do not address whether the specific division of premium between agents (85%) and insurers (15%) is reasonable.

9

or territory doing business in this State, the comptroller shall impose upon and collect from any similar company of such state or territory in the same manner and for the same purpose, the same taxes, licenses, fees, fines, penalties, deposit requirements or other obligations, prohibitions or restrictions; provided, however, the aggregate of taxes, licenses, fees, fines, penalties or other obligations imposed by this State pursuant to this Article on an insurance company of another state or territory shall not exceed the aggregate of such charges imposed by such other state or territory on a similar insurance company of this State that may be licensed and doing business.

Tex. Ins. Code Ann. art. 21.46 § 1(a).

Under the terms of the retaliatory tax statute, foreign insurers are required to file a report for the purpose of determining whether a retaliatory tax needs to be assessed against the insurers. *Id.* § (1)(d). Instructions for the Texas Title Agent Statistical Report, which is issued by the Department and is filed with the Commissioner of Insurance, require insurers to list premiums collected and various expenses imposed upon them. Although insurers had previously been allowed to include 100% of the premium tax in the retaliatory tax calculation, the Comptroller changed the previous interpretation of the retaliatory tax scheme, which she may do as long as the new interpretation does not contradict either statutory language or a formally promulgated rule. *See Moore*, 845 S.W.2d at 823 (agency's construction of statute entitled to deference as long as does not contradict statutory language); *Grocers Supply Co., Inc. v. Sharp*, 978 S.W.2d 638, 642 (Tex. App.—Austin 1998, pet. denied) (Comptroller's informal change in policy of how rule enforced did not "informally contravene the express terms of a formally promulgated rule."). Under the new interpretation, insurers are allowed to include only 15% of the premium tax for the purpose of determining the amount of retaliatory taxes, if any, to be paid.

When developing the new interpretation of the retaliatory tax scheme in which agents share responsibility for paying premium taxes, the Comptroller relied upon the fact that agents are exempt from paying franchise taxes or "additional" premium taxes. *See Gables Realty Ltd. P'ship,* 81 S.W.3d at 873 (statutes should be construed to give meaning to every word). Further, the Comptroller reasoned that because section 8(b) of the premium tax statute specifies that insurers receive the agents' portion of the premium tax due when the premium is divided among the agent and the insurer and because the Department has specified that title agents are to transfer 15% of the premium collected to the insurers, then only 15% of the premium tax is directly imposed on the insurer. Therefore, the insurer should only be allowed to include 15% of the premium tax for the purposes of calculating a retaliatory tax. *See* Tex. Ins. Code Ann. art. 9.59 § 8(b).

After adopting this new interpretation, the Comptroller, in 1996, instituted a policy that makes title agents responsible to the Comptroller for any portion of premium tax that is not remitted to insurers. *See* Tex. Ins. Code Ann. art. 9.59 § 3(c) (allowing Comptroller to create rules, limitations, minimum standards, and regulations that are fair, reasonable, and appropriate). This policy limited the insurers' obligation to remit premium tax actually collected if an insurer can prove that the title agent did not remit the portion of the premium the agent is required to give to the insurer. In 2000, the policy was published on the Internet based State Tax Automated Research System. *See* Texas Comptroller of Public Accounts, Star System No. 200009751L *available at* http://aixtcp.cpa.state.tx.us/star.

In addition, in 2001, the Comptroller amended rule 3.831, describing agents' and insurers' responsibilities for paying premium taxes. Under the amended rule, insurers are instructed

11

to collect the premium tax due on the agents' portion of the premium and remit to the Comptroller both the agents' and the insurers' portions of the premium tax. *See* 34 Tex. Admin. Code § 3.831(4)(B), (D) (2004) (Insurance Tax: Gross Premiums Definitions . . . and Clarification of the Taxation on the Distribution of Title Premiums). Further, section 3.831(4)(C) holds agents and insurers separately liable for their share of the premium tax. *Id.* § 3.831(4)(C). Specifically, section 3.831(4)(C) reads as follows:

> Title insurers and title agents are both subject to the premium and maintenance tax on their proportional share of the premiums and are separately liable if the insurer fails to remit the tax due on the agent's portion.

*Id.*

## DISCUSSION

On appeal, the appellants make the following three claims: (1) foreign-based insurers are entitled to include 100% of the premium taxes paid to the state of Texas in its calculation of the amount of retaliatory taxes owed; (2) agents do not, in fact, bear legal responsibility to pay 85% of the premium tax; and (3) the Comptroller's new interpretation of the retaliatory tax scheme is unconstitutional. For ease of reading, we will combine appellants' first two points.

**The Comptroller's Interpretation is Reasonable**

Appellants contend that the Comptroller's interpretation of the retaliatory tax scheme is incorrect. First, appellants assert that insurers are solely responsible for paying 100% of the premium tax and, similarly, assert that the obligation to pay premium taxes is not imposed on agents.

In support of their assertions, appellants point to section 111.016(a) and (b) of the tax code for the proposition that insurers will still have to pay 100% of the premium tax if agents do not transfer 15% of the premium to insurers. *See* Tex. Tax Code Ann. § 111.016(a), (b) (West 2001). Section 111.016(a) states, in relevant part, that "any person who receives or collects a tax or any money represented to be a tax from another person holds the amount so collected in trust for the benefit of the state and is liable for the full amount collected plus any accrued penalties and interest on the amount collected." *See* Tex. Tax Code Ann. § 111.016(a). Section 111.016(b) states, in relevant part, that "an individual who controls or supervises the collection of tax or money from another person . . . and who willfully fails to pay or cause to be paid the tax or money is liable as a responsible individual for an amount equal to the tax or money not paid or caused to be paid." *See* Tex. Tax Code Ann. § 111.016(b).

However, neither of these sections state that an insurer would be liable for the full amount of premium tax if agents do not turn over their share of the premium tax. Further, subsection (a) states that the person has to receive the tax in question in order to be held liable for the amount in question, and subsection (b) states that the responsible party must have willfully refused to pay the tax collected on behalf of another. Neither of these scenarios address the situation of agents refusing to turn over their portion of the premium tax to insurers.

As further support for the assertion that there is no premium tax imposed on agents, appellants point to the first sentence of section 8(b) of the premium tax statute, which states that "[t]he premium tax is levied on all amounts defined to be premium . . . whether paid to the title insurance company or retained by the . . . agent, such tax being in lieu of the tax on the premium

13

retained by the agent. . . ." Tex. Ins. Code Ann. art. 9.59 § 8(b). However, this sentence must also be read along with the last sentence of section 8(b), which states that the insurer receives the agent's portion of the premium tax due when the premium is divided between the agent and the insurer. *See id.* When read together, the "in lieu of" provision means that one comprehensive tax is formulated based on the total amount of premium with insurers collecting that portion of the premium that includes the agent's portion of the premium tax. *See Jones*, 969 S.W.2d at 432 (entire act, not isolated parts, must be considered). Although the statute requires title insurers to remit all of the premium tax to the Comptroller, the statute does not place all of the financial burden on the insurer.

Appellants also argue that the Comptroller's erroneous interpretation of the retaliatory tax scheme in which agents are responsible for paying 85% of the premium tax is based, in part, on an incorrect and isolated reading of section 8 of the premium tax statute, which contains the following language: "Title insurance companies and title insurance agents *subject to* the tax levied by this article . . . ." Tex. Ins. Code Ann. art. 9.59 § 8(a) (emphasis added). Appellants claim that agents can be "subject to" paying a tax without actually having to pay a tax. Further, appellants urge that, rather than meaning a tax must be paid, the phrase "subject to" in section 8(a) means to bring under dominion, control, or authority. *See Rylander v. Fisher Controls Int'l, Inc.*, 45 S.W.3d 291, 298-99 (Tex. App.—Austin 2001, no pet.) (court construed statute to mean taxpayer "subject to" taxation if there was possibility that state might impose taxation, not if individual actually required to pay tax). From this assertion, appellants contend that agents are subject to taxation because a tax could be legally imposed on agents but is not, and appellants insist that section 8 is only an exclusionary provision exempting insurers and agents from other taxes but does not impose taxes

on anyone. However, the premium tax statute contradicts appellants' assertion that agents are not responsible for paying any portion of the premium tax by stating that taxes on agents' portions of the premium collected are included within the portions transferred from agents to insurers after the premium has been divided. Tex. Ins. Code Ann. art. 9.59 § 8(b); *see also City of San Antonio*, 111 S.W.3d at 25 (if meaning unambiguous, statute should be interpreted to comport with that meaning).

In addition, appellants insist that the Comptroller's interpretation of the retaliatory tax scheme, under which both agents and insurers are liable for premium taxes, leads to absurd conclusions and unjust discrimination against foreign insurers, and, therefore, the previous interpretation should be reimplemented. *See Cramer v. Sheppard*, 140 Tex. 271, 167 S.W.2d 147, 155 (Tex. 1942) (statutory provisions will not be interpreted in way that leads to "absurd conclusions, great public inconvenience, or unjust discrimination" if another interpretation can reasonably be made). Appellants assert that, because insurers bear the responsibility to remit 100% of the premium tax to the state, the premium tax is a tax "directly imposed upon" insurers as described in the retaliatory tax statute. *See* Tex. Ins. Code Ann. art. 21.46 (requiring, for purposes of calculating retaliatory taxes, comparison of obligations imposed on foreign insurers doing business in Texas with obligations imposed on Texas insurers doing business in foreign state). Appellants contend that there is no statute or formal rule that would excuse a title insurer from having to pay the full premium tax if an agent does not remit 15% of the total premiums collected to the insurer and contend that the Comptroller has no statutory authority to collect premium from agents in the event that an agent fails to transfer the premium to an insurer; therefore, appellants insist insurers will be held liable for the full amount of premium taxes regardless of whether agents

transfer the premium or not. Further, appellants assert that if insurers do not pay 100% of the premium tax due because an agent has not transferred the premium, they will be subject to a collection proceeding for the amount not paid, and the Department may revoke its license to transact business in Texas. *See* Tex. Ins. Code Ann. arts. 9.59 § 9 ("A title insurance company failing to pay all taxes imposed by this article is subject to Article 4.05 of this code."); 4.05 (West Supp. 2004-05) (authorizing collection proceeding to collect taxes due on unreported gross premium receipts), *repealed by* Act of April 30, 2003, 78th Leg., R.S., ch. 1274, § 26(b)(4), 2003 Tex. Gen. Laws 3611, 4139 (effective April 1, 2005); 9.28 (West 1981) (authorizing revocation of certificate of authority to transact business if insurer does not comply with provisions of insurance code), *repealed by* Act of April 30, 2003, 78th Leg., R.S., ch. 1274, § 26(b)(4), 2003 Tex. Gen. Laws 3611, 4139 (effective April 1, 2005). Appellants assert that allowing insurers to include only 15% of the premium tax in the retaliatory tax calculation even though the insurers will be responsible for the full amount and may be subjected to the sanctions listed above is discriminatory and absurd.

However, as mentioned, the Comptroller amended rule 3.831 to codify the new interpretation that agents are proportionally liable for premium taxes. 34 Tex. Admin. Code § 3.831(4)(C). In addition, the Comptroller published a policy providing insurers a defense to being held responsible for all premium taxes if an agent does not remit its share of the premium tax due. The Comptroller's interpretation, the amended rule 3.831, and the Comptroller's published policy protect insurers from being responsible for the full amount of premium taxes if the agent does not remit its portion of the premium tax. The Comptroller's interpretation, policy, and rule do not lead

16

to absurd conclusions or unjust discrimination; on the contrary, they protect insurers from being unfairly held liable for taxes they do not pay or owe.

Alternatively, appellants argue that, even if agents are responsible for 85% of the tax, then the duty to remit 100% of the premium tax to the state qualifies as an "other obligation . . . directly imposed" on insurers under article 21.46, and, therefore, 100% of the premium tax should be included in the retaliatory tax calculation. *See* Tex. Ins. Code Ann. art. 21.46. Appellants assert that the phrase "other obligations" as listed in article 21.46 focuses on obligations that are directly imposed on an insurer, not on who bears the monetary burden, and extends beyond the legal liability for the tax and includes the obligation to remit the tax to the state. *See* Tex. Tax Code Ann. § 101.003(11) (West 2001) (obligation is "the duty of a person to pay a tax, fee, assessment, or other amount").

However, administrative duties to remit taxes collected from another entity without financial implications that can be quantified are not the type of "other obligations" that need to be included when performing the retaliatory calculation to determine what retaliatory taxes, if any, should be assessed. On the contrary, because all the other obligations listed before the phrase "other obligations" refer to financial obligations, the rule of ejusdem generis implies that the phrase "other obligations" also refers to obligations that have financial, not ministerial, implications.[4] *See Hillco Elec. Coop. v. Midlothian Butane Gas Co., Inc.,* 111 S.W.3d 75, 81 (Tex. 2003) (rule of ejusdem generis "provides that when words of a general nature are used in connection with the designation

---

[4] Because the Department is required to consider insurers' relevant expenses for the purposes of setting premium rates, we will presume that the Department accounted for the obligation of remitting agents' portions of the premium tax.

17

of particular objects or classes of persons or things, the meaning of the general words will be restricted to the particular designation.").

Contrary to the appellants' assertions, the Comptroller's new interpretation and rule 3.831 do not impose additional restrictions, conditions, or burdens that are inconsistent with either the retaliatory tax statute or the premium tax statute. *See Hollywood Calling v. Public Util. Comm'n of Tex.*, 805 S.W.2d 618, 620 (Tex. App.—Austin 1991, no writ) (rule "may not impose additional burdens, conditions, or restrictions beyond or inconsistent with the statutory provisions."). Rule 3.831(4)(C) does not directly contradict any statutory language because the premium tax statute states that an agent's portion of the premium tax is included within the division of premium transferred to the insurer, here 15%. In addition, the retaliatory tax statute only requires inclusion of financial obligations "directly imposed" on an insurer. Further, the new interpretation and the rule do not run counter to the general objectives of the retaliatory tax statute or impose any burdens that are in excess of or inconsistent with the statute. The retaliatory tax statute is designed to equalize burdens imposed on Texas-based insurers by foreign states and the burdens imposed by Texas on foreign-based insurers. The rule and the Comptroller's new interpretation make insurers responsible for the portion of premium taxes they actually pay. Including what the insurers are actually responsible for in the retaliatory tax equation does not contravene the objectives of the statute; on the contrary, it actually enforces the objectives. The fact that insurers may have to pay more as retaliatory taxes than was required before as a result of including only the amount insurers actually pay in premium taxes does not impose an additional tax in excess of statutory objectives. Rather, the new interpretation and rule impose the burden contemplated by the retaliatory tax statutory

18

scheme. Enacting this rule and adopting the Comptroller's new reasonable interpretation of the retaliatory tax scheme, which facilitate the purpose of the retaliatory tax scheme, were not, as suggested by the appellants, abuses of discretion. *See Buddy Gregg Motor Homes, Inc. v. Motor Vehicle Bd. of the Tex. Dep't of Transp.*, 156 S.W.3d 91, 102 (Tex. App.—Austin 2004, pet. filed) (when determining whether agency abuses its discretion, court must ascertain whether agency "based its decision on legally irrelevant factors or failed to consider legally relevant factors.").

The Comptroller's interpretation, policy, and rule stating that insurers are not responsible for the full 100% of the tax because agents give insurers their share of the tax when they give an insurer 15% of the premium collected are reasonable and do not conflict with the plain meaning of either the retaliatory or premium tax statutes. On the contrary, they specify exactly what section 8(b) of the premium tax statute requires: the insurer receiving "the premium tax due on the agent's portion" through the division of premium between agents and insurers. Accordingly, we overrule appellants' first two issues on appeal.

**Comptroller's Application of Retaliatory Tax Statute is Constitutional**

In addition to arguing that the Comptroller's new interpretation is incorrect, appellants also assert that the Comptroller's application of the retaliatory tax is unconstitutional because it violates the equal protection clause. Specifically, appellants insist that the retaliatory taxes imposed under the Comptroller's new interpretation unlawfully raise revenue for the state at the expense of foreign insurers, exceed the "relatively modest" amount of revenue raised under the California retaliatory tax scheme found constitutional in *Western and Southern Life Insurance*, and do not serve the purpose of promoting the interstate business of domestic insurers by deterring other

19

states from enacting discriminatory taxes. *See Western & S. Life Ins. Co.*, 451 U.S. at 668-72; *see also Metropolitan Life Ins. Co. v. Ward*, 470 U.S. 869, 882 n.10 (1985) (state may not impose "discriminatorily higher taxes on nonresident corporations solely because they are nonresidents."). Appellants urge the court to interpret Article 21.46 as requiring insurers to include 100% of the premium tax paid in the retaliatory tax calculation in order to avoid the alleged constitutional infirmities. *See Brady*, 795 S.W.2d at 715; Tex. Gov't Code Ann. § 311.021(1) (West 2005); *Ex parte Elliot*, 973 S.W.2d 737, 742 (Tex. App.—Austin 1998, pet. ref'd).

Alternatively, if the court determines that the Comptroller's interpretation is the only permissible interpretation, appellants contend the court should declare the entire retaliatory tax statute unconstitutional because it imposes retaliatory taxes on foreign-title insurers that exceed the aggregate tax burden that would be imposed on a comparable Texas insurer doing business in the foreign state.[5]

The equal protection clause of the United States Constitution forbids states from denying to any person located within the jurisdiction of the states equal protection of the law. *See id.* at 656-57. Similarly, the Texas Constitution also guarantees equal rights to all persons. Tex. Const. art. I, § 3. When determining whether a tax is unconstitutional, courts must look to the substance of the tax and not the form of the tax. *See Hanover Fire Ins. Co. v. Harding County*, 272 U.S. 494, 509-10 (1926) (court must regard substance not form for determining whether tax

---

[5] Additionally, appellants insist that the Comptroller's interpretation would cause other states to retaliate against Texas-based insurers, which would be detrimental to both foreign and domestic insurers. However, it is not within the purview of this court to consider what other states may or may not do as a result of the Comptroller adopting this new interpretation. It is for the legislature, not the courts, to consider the possibility of other states' reactions when enacting legislation.

constitutional, and test is "in the operation and effect of the law as applied and enforced by the state" (quoting *St. Louis S.W. Ry. Co. v. Arkansas*, 235 U.S. 350, 362 (1914))). Based on this premise, appellants insist that, regardless of whether the insurer or the agent is technically liable for the 85% of the premium tax, the Comptroller's interpretation imposes financial burdens on foreign insurers doing business in Texas that greatly exceed the financial burdens imposed on Texas insurers in the foreign state. Specifically, appellants contend that, because insurers will be allowed to include only 15% of the premium tax in the retaliatory tax calculation, foreign insurers will have to pay the difference between 15% of the premium tax imposed by Texas and the *total* premium tax the foreign state imposes, which would lead to foreign insurers paying significantly larger taxes than a comparable Texas insurer engaged in business in the foreign state.

However, we do not agree with the appellants' characterization of the Comptroller's interpretation. Because the Texas retaliatory statute applies only to foreign insurers, the equal taxation test applicable to retaliatory taxes requires a determination of whether the distinction between foreign and domestic insurers is rationally related to a legitimate government purpose. *Western & S. Life Ins. Co.*, 451 U.S. at 657.[6] Generally speaking, retaliatory taxes are constitutional and raise minimum amounts of revenue. *Id.* at 669-70. Retaliatory taxes are applied to foreign insurers for the purpose of deterring other states from imposing excessive taxes against domestic insurers, or alternatively, to compensate for higher out-of-state tax obligations imposed on Texas insurers, which serves a legitimate governmental purpose. *Id.* at 668-72.

---

[6] Contrary to appellants' assertions, the test of the constitutionality of a retaliatory tax is not whether a retaliatory tax has increased or decreased over time, nor is the test whether the tax raises revenue. All taxes raise revenue, including the previous retaliatory tax statute.

21

Under the Comptroller's interpretation of the retaliatory tax scheme, title agents remit 85% of the premium tax to title insurers. Appellants assert that by allowing foreign insurers to include only 15% of the premium tax in the retaliatory tax calculation, the Comptroller is imposing retaliatory taxes on foreign-title insurers that exceed the aggregate financial burden imposed on comparable Texas insurers doing business in the foreign state. The Comptroller's interpretation allows foreign insurers selling title insurance in Texas to include only the portion of the premium tax they actually pay in the retaliatory tax calculation. It compares a foreign title insurer's aggregate financial obligations in Texas to a Texas insurer's aggregate financial obligations in a foreign state; it then requires a retaliatory tax from a foreign-based insurer only if its Texas counterpart pays more in the foreign state, and requires, as payment in retaliatory taxes, the amount that would equalize the financial burdens on foreign insurers doing business in Texas and Texas insurers doing business in the foreign state. Accordingly, the Comptroller's interpretation serves the legitimate state purpose of deterring other states from imposing excessive taxes against Texas insurers. Therefore, both the retaliatory tax statute and the Comptroller's application of the retaliatory tax scheme are constitutional. *Compare Western & S. Life Ins. Co.,* 451 U.S. at 674 (California retaliatory tax statute constitutional), *with Ward*, 470 U.S. at 878, 882 (statute unconstitutional that gave domestic companies preferential treatment and burdened all foreign corporations regardless of what foreign states did).

Appellants further insist that because the Comptroller's current interpretation of article 9.59 has not been consistently and uniformly applied by the Comptroller, then the Comptroller's current interpretation is not entitled to judicial deference, and the Comptroller should

22

be required to return to the previous interpretation. *See Texas Citrus Exch. v. Sharp,* 955 S.W.2d 164, 170 (Tex. App.—Austin 1997, no pet.) (courts do not defer to administrative construction that deviates from clear and express provisions of statutory scheme, and courts give greater deference to agency interpretation that is long-standing and applied uniformly). However, just because the Comptroller uniformly enforced a statute until a certain date and then uniformly enforced the statute in a different manner does not mean there is a constitutional violation, especially where, as the Comptroller asserts, all the taxpayers have been treated equally since the new interpretation was adopted. *See generally Grocers Supply Co., Inc.*, 978 S.W.2d 638 (Tex. App.—Austin 1998, pet. denied). In the Comptroller's summary judgment evidence, she demonstrated that the new instructions have been consistently applied to audits conducted since 2000, which includes report years since 1996.

Further, taxpayers do not acquire a right to pay less in taxes because they have been charged lower taxes in the past or because a tax policy was incorrectly implemented. *See id.* (Comptroller changed previous interpretation of tax statute, and grocery store applied for refund of sales taxes previously paid; however, Comptroller changed interpretation of tax statute back to previous interpretation, and court held grocery store not entitled to refund). Past omissions by the Comptroller will not serve as a bar to the Comptroller enforcing the statute and from imposing the correct financial obligation on title insurers. *See Sharp v. House of Lloyd, Inc.*, 815 S.W.2d 245, 249 (Tex. 1991) (Comptroller did not enforce part of franchise tax statute for thirteen years, but supreme court held prior non-enforcement could not prevent Comptroller from properly collecting taxes due as required by statute).

Title insurers are financially obligated to pay 15% of the tax due on premiums. This requirement is mandated by the premium and retaliatory tax statutes and by the Comptroller's interpretation of these statutes. Requiring insurers to include only the 15% of the premium tax they actually pay does not render the retaliatory tax scheme unconstitutional. Because we conclude that the retaliatory tax statutory scheme and the Comptroller's application of it are constitutional, we overrule appellants' third issue on appeal.

## CONCLUSION

The Comptroller's interpretation of the premium tax and retaliatory tax scheme is reasonable and does not contradict the plain meaning of either the retaliatory tax or the premium tax statutes. Further, the Comptroller's application of the two statutes is constitutional. Accordingly, the district court did not err in granting the Comptroller's motion for summary judgment and in denying appellants' motion for summary judgment. Therefore, we overrule appellants' three claims and affirm the judgment of the district court.

David Puryear, Justice

Before Justices B. A. Smith, Puryear and Pemberton

Affirmed

Filed: June 3, 2005

24