NO. 07-06-0017-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



JANUARY 25, 2006



______________________________




IN RE JOHANSON LEE WATSON, RELATOR






_______________________________


 


Before REAVIS and CAMPBELL and HANCOCK, JJ.

MEMORANDUM OPINION


 Relator Johanson Lee Watson, an indigent inmate, seeks a writ of mandamus to
compel the Honorable Tom Neely to consider and rule on certain motions. Presenting four
issues, relator maintains he is entitled to mandamus relief. For the reasons expressed
herein, we must deny the request for a writ. 

 Pursuant to a plea of guilty, in 1997, appellant was convicted of sexual assault in
the 46th District Court of Wilbarger County. In 2001, the convicting court denied relator's
motion for DNA testing reciting that "no evidence containing biological material has been
preserved, and that identity was not and is not an issue in this case." The trial court's
ruling was affirmed by this Court in Watson v. State, 96 S.W.3d 497 (Tex.App.-Amarillo
2002, pet. ref'd). In May 2003, pursuant to relator's inquiry, the Texas Department of
Public Safety notified him that evidence samples used in his case were still being
preserved in the Department's laboratory. 

 Relator must satisfy three requirements to establish his entitlement to the issuance
of a writ of mandamus, to-wit: (1) a legal duty to perform; (2) a demand for performance;
and (3) a refusal to act. Stoner v. Massey, 586 S.W.2d 843, 846 (Tex. 1979). When a
motion is properly filed and pending before a trial court, the act of considering and ruling
upon the motion is a ministerial act. Eli Lilly and Co. v. Marshall, 829 S.W.2d 157, 158
(Tex. 1992). However, the trial court has a reasonable time within which to perform that
ministerial duty. Safety-Kleen Corp. v. Garcia, 945 S.W.2d 268, 269 (Tex.App.-San
Antonio 1997, orig. proceeding). Whether a reasonable period of time has lapsed is
dependent on the circumstances of each case. Barnes v. State, 832 S.W.2d 424, 426,
(Tex.App.-Houston [1st Dist.] 1992, orig. proceeding). Other factors are influential such
as the trial court's actual knowledge of the motion, its overt refusal to act, the state of its
docket, and other judicial and administrative duties which must be addressed. In re
Villarreal, 96 S.W.3d 708, 711 (Tex.App.-Amarillo 2003, orig. proceeding). Further, the
party requesting relief must provide a sufficient record to establish his entitlement to
mandamus relief. Walker v. Packer, 827 S.W.2d 833, 837 (Tex. 1992). See also In re
Bates, 65 S.W.3d 133, 135 (Tex.App.-Amarillo 2001, orig. proceeding); In re Villarreal, 96
S.W.3d at 710 n.2 (filing something with the district clerk does not demonstrate that a
motion has been brought to the trial court's attention). 

 Several copies of documents presumably filed in the convicting court accompany
relator's petition for writ of mandamus. On August 29, 2005, he filed a motion in the
convicting court requesting appointment of counsel to pursue a motion for DNA testing
pursuant to article 11.07, section four of the Texas Code of Criminal Procedure. A motion
for leave to subpoena or call potential witnesses was filed on September 12, 2005, and on
September 19, 2005, he filed a motion for leave for supplemental [sic] and exhibits. 

 According to copies of three letters dated October 5, November 1, and December
19, 2005, relator corresponded with the Wilbarger County District Clerk inquiring on the
disposition of his motions. A copy of the District Clerk's response to relator's October 5th
inquiry indicates his request was forwarded to his attorney, Earl Griffin. The limited record
before us also contains a file-stamped motion dated November 29, 2005, for leave to
compel the District Judge of Wilbarger County to act on relator's petition for writ of habeas
corpus. Nothing in the scant record demonstrates presentation of the motions to the trial
court and a refusal to act. We conclude relator has not satisfied the burden to show his
entitlement to mandamus relief. See Walker, 827 S.W.2d at 837.

 Accordingly, relator's petition for writ of mandamus is denied.

 Don H. Reavis

 Justice



when no "child custody proceeding" has been
commenced in a court of another state having jurisdiction over the child and Texas has
become the child's home state may a "child custody determination" of a court exercising
emergency jurisdiction under §152.204(a) become final. Id. §152.204(b). (3) 

 Application of Law

 The proceeding from which this appeal arose was commenced on October 4, 2004. 
On that date, the Texas Department of Family and Protective Services (DPS) filed a
document entitled "Original Petition for Protection of a Child, For Conservatorship, and for
Termination in Suit Affecting the Parent-Child Relationship." The fourth of October was
also the date on which J.C.B.'s parents were arrested for possessing drugs while driving
through Texas from Oklahoma. It is undisputed that neither J.C.B. nor his parents were
residents of Texas at the time. Nor does anyone dispute that the child's home state was
Oklahoma and that no Oklahoma court declined, in favor of Texas, to exercise its
jurisdiction over J.C.B. Thus, it is clear that the trial court's jurisdiction to make a child
custody determination could not be founded upon §152.201 of the Family Code. Yet, that
is not true of §152.204.

 With the arrest of his parents, J.C.B., who was approximately 16 months old, could
not care for himself. Nor was there any friend or relative present and to whom the toddler
could be released. So, while the arrest of his parents may not be deemed their
abandonment of him in a technical sense, the child, no doubt, was faced with impending
mistreatment or abuse if left alone. Thus, the trial court had temporary jurisdiction under
§152.204(a) to intervene to secure his welfare. And, it did so by entering temporary orders
on November 1, 2004, appointing the DPS his managing conservator. 

 Since November 1st, and despite the release of J.C.B.'s mother from jail and her
assumption of residence in Texas, the toddler remained in the managing conservatorship
of the DPS until trial in February of 2006. Having had managing conservatorship over
J.C.B. for those 14 months, it could be said that J.C.B.'s home state has since become
Texas. (4) Additionally, not only did counsel for Richard inform the trial court that he knew of
no other proceeding involving J.C.B. having been commenced elsewhere but also counsel
for the DPS expressly represented that no such actions pended elsewhere. Given that
these unsworn evidentiary comments by both counsel went uncontested, the trial court was
entitled to rely on them as evidence establishing the subject of the utterances. See Banda
v. Garcia, 955 S.W.2d 270, 272 (Tex. 1997) (recognizing that unsworn utterances of an
attorney can be considered evidence if no one objects to them). So too do we note that
actions to terminate parental rights fall within the scope of child custody determinations. 
See White v. Blake, 859 S.W.2d 551, 561-63 (Tex. App.-Tyler 1993, no writ) (so holding). 
And, in ordering the parental relationship to be terminated, the trial court implicitly directed
that the subject of its order be final. Indeed, one cannot reasonably think of such an order
as simply being temporary or a stop gap measure. 

 Taken together, the foregoing indicia serve to prove that the trial court had authority
to act under §152.204(a). Having subject matter jurisdiction to act under that provision, we
cannot but overrule Richard's contention. Thus, the trial court's order of termination is
affirmed.

 Brian Quinn 

 Chief Justice
1. The rights of the child's mother Kimberly Kay Beats were also terminated, but she has not filed an
appeal. 
2. Stating that: "[a] court of this state has temporary emergency jurisdiction if the child is present in this
state and the child has been abandoned or it is necessary in an emergency to protect the child because the
child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse." Tex. Fam.
Code Ann. §152.204(a) (Vernon 2002).
3. The statute reads:


 If there is no previous child custody determination that is entitled to be enforced under this
chapter and a child custody proceeding has not been commenced in a court of a state having
jurisdiction under Sections 152.201 through 152.203, a child custody determination made under this section remains in effect until an order is obtained from a court of a state having
jurisdiction under Sections 152.201 through 152.203. If a child custody proceeding has not
been or is not commenced in a court of a state having jurisdiction under Sections 152.201
through 152.203, a child custody determination made under this section becomes a final determination, if it so provides and this state becomes the home state of the child. 


Tex. Fam. Code Ann. §152.204(b) (Vernon 2002).
4. Admittedly, the definition of "home state" contains a residency requirement for a particular period
before suit is commenced. See Tex. Fam. Code Ann.§152.102(7) (Vernon 2002) (defining the child's home
state as the state in which the child lived with a parent or one acting as a parent for at least six months
"immediately before the commencement of a child custody proceeding"). However, §152.204 permits a
custody determination rendered via the emergency jurisdiction of a trial court to become final if, among other
things, the child's home state becomes Texas once the order is entered. Considering the two together and
affording each the authority implicit in their words, we cannot but conclude that the concept of "home state"
differs when jurisdiction is invoked under §152.204(a) and omits the requirement that the six months of
residence occur before the proceeding is commenced. If this were not so, then there could be no home state
for purposes of finalizing orders rendered via emergency jurisdiction since the proceeding began before the
child had resided with a parent or parent surrogate in Texas for six months. See First American Title Ins. Co.
v. Strayhorn, 169 S.W.3d 298, 304 (Tex. App.-Austin 2005, pet. denied) (requiring us to interpret facially
contradictory statutes in a way that upholds both).